UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUE BRINKLEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 4:04CV00560 AGF |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security, denying plaintiff Sue Brinkley's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381, et seq.[1] For the reasons set forth below, this case shall be remanded for further administrative proceedings to determine the appropriate age category to be used in considering whether Plaintiff is disabled.

Plaintiff, who was born on April 23, 1954, applied for SSI and disability benefits on June 28, 2002, claiming a disability onset date of September 6, 2001, due to a heart attack and spinal arthritis. After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, and a hearing was held on

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

December 1, 2003. On December 23, 2003, the ALJ issued a decision that Plaintiff was not disabled as defined by the Act. The Appeals Council of the Social Security Administration denied Plaintiff's request for review. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action subject to judicial review.

## SUMMARY OF ALJ'S FINDINGS

Following the evidentiary hearing, the ALJ made the following findings:

1. Plaintiff met the disability insured status requirement of the Social Security Act on September 6, 2001, the date she stated that she became unable to work, and continued to meet them through December 31, 2006.

2. Plaintiff had not engaged in substantial gainful activity since September 6, 2001.

3. The medical evidence established that Plaintiff had chronic obstructive pulmonary disease (COPD), a history of myocardial infarction, and degenerative changes to the lumbar spine, but that she did not have an impairment or combination of impairments listed in, or medically equivalent to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Although Plaintiff had some pain and shortness of breath, Plaintiff's allegations of disabling pain and shortness of breath were not persuasive or credible, for reasons enumerated in the decision.

5. Plaintiff had the residual functional capacity (RFC) to perform the physical exertion requirements of work except for prolonged walking or standing and lifting in excess of ten pounds. There were no non-exertional limitations.

6. Plaintiff was unable to perform her past relevant work as a cashier.

7. Plaintiff had the RFC to perform the full range of sedentary work.

8. Plaintiff was 49 years old, which is defined in the relevant regulations as a younger individual.

9. Plaintiff completed the 12th grade of school.

10. In view of Plaintiff's age and RFC, the issue of transferability of skills was not relevant.

11. Based upon the exertional capacity for sedentary work, and Plaintiff's age, education, and work experience, Rule 201.21 and 201.22 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 (Guidelines) directs a conclusion of "not disabled."

12. Plaintiff was not under a "disability" as defined by the Social Security Act at any time through the date of the ALJ's decision.

Tr. at 20-21.

Plaintiff argues that the ALJ erred in (1) mechanically assigning Plaintiff her chronological age in determining that she was not disabled under the Guidelines, (2) assessing Plaintiff an RFC that was not supported by any medical evidence, (3) discrediting Plaintiff's subjective complaints of symptoms, and (4) concluding that Plaintiff was not disabled without obtaining the testimony of a vocational expert.

## BACKGROUND

### Work Record

Plaintiff noted on her applications for benefits that she was a housewife from 1977 until October 1996 and a cashier from October 1996 until September 2001. Tr. at 77. Her earnings records show earnings in 1997 through 2001 of approximately $7,000 to $9,000 per year. Tr. at 66.

3

**Medical Record**

On September 6, 2001, Plaintiff was hospitalized, having sustained a myocardial infarction. She underwent angioplasty in one coronary artery and was discharged on September 11, 2001, to resume normal activity as tolerated. Tr. at 125-129, 166-76. The echo stress test conducted on September 11, 2001, showed Plaintiff's "Peak METs" as 2.[2] Tr. at 176. Aside from these hospital records, the relevant medical evidence consists of two reports by a consulting physician, Stanley Rabinowitz, M.D., who examined Plaintiff on February 25, 2002 and again on August 1, 2002; two physical RFC assessments completed by non-examining consulting physicians, dated March 5, 2002 and August 23, 2002; treatment notes from St. Louis ConnectCare dated July 30 and September 3, 2003; and a report of an electrocardiogram (ECG) conducted on August 4, 2003.

Following the February 2002 examination, Dr. Rabinowitz reported that Plaintiff was 47 years old, 5' 3" tall, and weighed 166 pounds. He noted that Plaintiff had a history of COPD and shortness of breath for more than a year. Plaintiff would get out of breath when walking one block and wheezed intermittently. She had smoked two packs of cigarettes per day for 22 years, but reduced this to one-half pack as of September 2001. Plaintiff was not taking any medication for the COPD. Dr. Rabinowitz noted that Plaintiff reported recurrent chest pains that lasted about five minutes about once a week, pains

---

[2] Exercise capacity frequently is reported in metabolic equivalents of task (METs), which indicate units equivalent to the metabolic equivalent of resting oxygen uptake while sitting. An exercise capacity of 5 METs or less is associated with a poor prognosis in patients younger than 65 years. www.emedicine.com/emerg/topic866.htm

which were not particularly related to exertion and often occurred when Plaintiff was lying down. Plaintiff was taking one aspirin a day and was not using nitroglycerin. Dr. Rabinowitz opined that the chest pains appeared consistent with gastrointestinal origin and atypical of cardiac origin. He noted Plaintiff's cigarette smoking as a coronary risk factor and also noted her family history of heart disease, with two brothers sustaining myocardial infractions in their early forties. Tr. at 182, 185.

Dr. Rabinowitz reported that Plaintiff had a history of arthritis for the past ten years, but that she was not taking any medication for this. She complained of chronic low back pain which radiated down the left lower extremity. Plaintiff rated her back pain as nine on a scale of one to ten, with ten being the most severe pain. She claimed that this pain was often exacerbated by activities, and that she had difficulty bending repetitively, turning or twisting her back, and lifting heavy objects. Dr. Rabinowitz observed a "small, raised erythematous eruption along the left medial mandibular region the etiology of which is unclear." Tr. at 183.

Physical examination revealed normal range of motion throughout, with no joint inflamation or muscle spasm. Straight leg raising was negative. Dr. Rabinowitz reported that Plaintiff was able to ambulate around the room without the need for an assistive device, though she did walk with a mild left antalgic gait (a limp adopted so as to avoid pain on weight-bearing structures as in hip, knee, or ankle injuries). Plaintiff's grip strength and dexterity were "preserved." She had no difficulty getting on and off the examining table, but had mild difficulty squatting. Chest examination revealed no "adventitial breath

sounds" and no evidence of "clubbing or cyanosis." Pulmonary function studies indicated mild restrictive and obstructive airways disease. An x-ray of the lumbar spine showed mild degenerative changes of L5-S1. Tr. at 185-86

On March 5, 2002, a non-examining medical consultant, Julio Pardo, M.D., prepared a physical RFC assessment. He indicated in check-box format that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds; stand and/or walk, and sit with normal brakes for about 6 hours in an eight-hour workday; and push or pull without limitation. Dr. Pardo found that the medical evidence in the record did not establish any postural (climbing, balancing, stooping, kneeling, crouching, and crawling), manipulative, visual, or environmental limitations, with the exception that Plaintiff had to avoid concentrated exposure to fumes, dust, etc. Tr. at 190-97.

Dr. Rabinowitz's medical report dated August 5, 2002, is largely consistent with his earlier report. He stated that Plaintiff's skin appeared without evidence of a rash, but he also again noted a small raised erythematous lesion along the left medial mandibular region. Dr. Rabinowitz noted that Plaintiff related this to an old burn, and that the reason for the lack of healing was unclear. Tr. at 198-201. The second physical RFC assessment referenced above was prepared by B. Rock Oh, M.D., whose conclusions in the check-box section of the assessment were identical to Dr. Pardo's. Dr. Oh added in narrative form that Plaintiff was capable of medium work. Tr. at 203-10.

The ConnectCare treatment notes from July 30, 2003, which are somewhat illegible, state that Plaintiff sought treatment for a two-year-old rash on her chin and nose, arthritis,

6

and heart attack follow-up. The notes indicate that the only medication Plaintiff was taking at the time was aspirin, and that Lotrimin, an antifungal cream, was prescribed for the rash. Tr. at 214-25. On August 4, 2003, several tests were conducted including an electrocardiogram (ECG) which was read as "abnormal," showing normal sinus rhythm, but left atrial enlargement and "ST & T Wave Abnormality - Consider Anterior Ischemia" (occlusion of the left anterior descending coronary artery). Tr. at 223. ConnectCare treatment notes from September 3, 2003, report that Plaintiff's only complaint was her rash, which was better but still there. Plaintiff denied chest pain ("C.P.") with normal walking, but stated that she felt chest pain with fast walking, and that these pains decreased with rest of less than one minute. Plaintiff reported no shortness of breath ("SOB"). The notes state that Plaintiff had stable angina. Hydrocortisone cream was prescribed for Plaintiff's rash. Tr. 213.

**Evidentiary Hearing**

Plaintiff testified that she was 49 years old and had completed 12th grade but did not get a high school diploma. She testified that she was 5' 4½" tall and weighed about 173 pounds, having gained about 20 pounds since she stopped working on September 6, 2001. She had worked as a cashier at a fast food restaurant for several years until that date, when she had a heart attack at work. Plaintiff testified that she could not go back to work after that because no one would her hire due to a skin rash she had on her face, for which she had been using medications for about six months without results. Tr. at 249-53.

Plaintiff testified that she could walk about one block before getting out of breath. She testified that she had smoked two packs of cigarettes per day for about 14 years, but had recently reduced that to half a pack per day. Plaintiff testified that she still got chest pains and numbness in her fingers about three times per week after exerting herself doing house chores or caring for her two-year old grandson, whom she had been "watching for a while." Tr. at 253-57. She testified that when she felt chest pains she would take nitroglycerin, which relieved her pain in about five minutes, with no bad side effects. Plaintiff was asked about back problems, and she responded that she had arthritis and experienced pain in her back as well as in her knees as a result of which she could only stand for about ten minutes at a time. She further testified that she could not sit for an hour or two at a time without experiencing discomfort, that she could only lift about 20-25 pounds, and that she could not stoop or bend without experiencing pain. Tr. at 258-60.

Plaintiff described her daily activities as cleaning the house, cooking for her two brothers with whom she lived, and doing her own laundry. She stated that her brothers did the grocery shopping because it was too hard for her. She also stated that she had not driven in over a year, that she did not go to church or social groups, and that her friends mostly came to her rather than her going out to visit them. Plaintiff testified that she was able to take care of her personal needs, though she had trouble getting her socks and shoes on. She testified that her doctors advised her not to eat high cholesterol foods and prescribed medication to control her cholesterol, but her doctors did not place any restrictions on her physical activities. Plaintiff testified that one of her doctors told her that she had spinal

arthritis. Tr. at 260-65.

**<u>ALJ's Decision of December 22, 2003</u>**

The ALJ found that the medical evidence established that Plaintiff had COPD, degenerative changes of the lumbar spine, and a history of a myocardial infarction, all of which limited her ability to do work-related activities but which did not meet or equal an impairment listed in Appendix I. The ALJ summarized the medical evidence and observed that no doctor who had treated or examined Plaintiff rendered a medical opinion that she was unable to work, or that her chest pain was of cardiac origin. The ALJ noted that despite test results showing mild to moderate COPD, Plaintiff continued to smoke. The ALJ further noted the absence of evidence of muscle spasms or sensory or motor deficits. The ALJ observed that the August 4, 2003 ECG showed normal sinus rhythm with left atrial enlargement; he did not mention that the ECG was considered to be "abnormal" or the notation "ST & T Wave Abnormality - Consider Anterior Ischemia." The ALJ added that Plaintiff had not been under the recent care of a cardiologist. Tr. at 18-19.

The ALJ concluded that Plaintiff retained the RFC to perform the full range of sedentary work,[3] finding that she could not perform activities requiring "substantial exertion," and that, at most, she was precluded from prolonged walking or standing and

---

[3] Sedentary work involves lifting no more than ten pounds at a time and walking and standing occasionally (about two hours of an eight-hour workday). Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions. 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996).

9

lifting in excess of ten pounds. The ALJ concluded that Plaintiff was unable to return to her past relevant work and turned to the Guidelines to determine whether there were other jobs existing in the national economy which Plaintiff could perform. The ALJ stated that in view of Plaintiff's age and RFC, the issue of transferability or work skills was not material under Rules 201.21 and 201.22 of the Guidelines, each of which directed a conclusion of not disabled. These rules presume the ability to do sedentary work, an age of 45 through 49, and an educational level of high school graduate or more.[4]

The ALJ explained that in reaching this conclusion, he considered Plaintiff's subjective complaints and non-exertional limitations under the standard set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). The ALJ noted Plaintiff's brief earnings record, and that no doctor concluded that she could not return to work activity. With regard to Plaintiff's allegation that no one would hire her due to the skin condition on her face, the ALJ cited 20 C.F.R § 404.1566 for the proposition that an individual is not disabled due to an inability to get hired for available work. The ALJ noted that Plaintiff was able to do household chores and care for her two-year-old grandson; underwent only "minimal conservative treatment;" did not engage in physical therapy, an exercise or weight loss program, a pain clinic, or cardiac rehabilitation; continued to smoke; and took her current medications without adverse side effects. While recognizing that Plaintiff had some pain and shortness of breath, the ALJ found her allegations that these symptoms were at a

---

[4] A person with the same characteristics except for not being a high school graduate is also deemed to be not disabled, pursuant to Rule 201.19.

disabling level to be unpersuasive and not credible. Tr. at 19-20.

## **DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir.1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . the court must also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). If after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

In order to qualify for Social Security disability benefits, a person must demonstrate an inability to engage in any substantial gainful activity by reason of a medically

determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both the impairment and the inability to engage in substantial gainful employment must last or be expected to last not less than 12 months).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, disability benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment (or combination of impairments), defined in 20 C.F.R. § 404.1520(c) as an impairment which significantly limits a claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, the disability claim is denied. If the impairment is severe, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

If the claimant's impairment meets or equals a listed impairment, the claimant is conclusively presumed to be disabled. If the impairment is one that does not meet or equal a listed impairment, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant is able to perform his past relevant work, he is not disabled. If he cannot perform his past relevant work, step five asks whether the claimant has the RFC to perform work in the national economy in view of his vocational factors, i.e., his age, education, and work experience. If not, the claimant is declared disabled and is entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)-(f); Fastner v.

Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). At step five, the burden is upon the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with his vocational factors. Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). If a claimant's impairments are exertional (affecting the ability to perform physical labor), the Commissioner may carry this burden by applying the Guidelines, which classify, in a chart format, a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience. Id.

Where a claimant cannot perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Guidelines due to nonexertional impairments such as pain, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony by a vocational expert. Id.; Wilcutts v. Apfel, 143 F.3d 1134, 1137 (8th Cir. 1998).

**ALJ's Assessment of Plaintiff's RFC**

Plaintiff argues that the ALJ's assessment that she had the RFC for sedentary work is not supported by medical evidence. A disability claimant's RFC reflects what she can still do despite her limitations. 20 C.F.R. § 404.1545(a). The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (citation

omitted). Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for determining a claimant's RFC. Id. As noted, an RFC is based on all relevant evidence, but it "remains a medical question" and "'some medical evidence must support the determination of the claimant's [RFC].'" Id. at 1022 (quoting Hutsell, 259 F.3d at 711). The ALJ is therefore required to consider at least some supporting evidence from a medical professional. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Here, the medical record includes two reports by an examining consulting physician (Dr. Rabinowitz) and two physical RFC assessments completed by non-examining consulting physicians who reviewed the medical evidence, including Dr. Rabinowitz's recent report(s). These RFC assessments support the ALJ's finding that Plaintiff could perform sedentary work. Indeed, Dr. Oh opined that Plaintiff could perform medium work. Although the opinions of consultants, and especially non-examining consultants, do not carry as much weight as the opinion of a treating physician, such opinions have been held sufficient to satisfy the requirement for "some medical evidence " where, as here, the consultants' assessments were not inconsistent with other medical evidence in the record. See, e.g., Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's conclusion that Plaintiff could perform light or sedentary work without right arm overhead work was properly supported by some medical evidence consisting of an examining consulting physician's medical report and a medical expert's opinion with regard to plaintiff's physical capabilities); Krogmeier, 294 F.3d at 1024 (ALJ's RFC assessment was valid where it was

supported by a non-examining consulting physician's opinion and where the ALJ conducted an independent review of the medical evidence); cf. Lauer, 245 F.3d 705 (ALJ's RFC assessment was not properly supported where the only doctor who had opined that plaintiff could work was a non-examining consulting physician who did not view all the medical records, did not provide an explanation for his conclusion, and did not diagnose plaintiff with the same mental impairments that the ALJ concluded were established by the medical evidence).

**ALJ's Evaluation of Plaintiff's Subjective Allegations of Symptoms**

Plaintiff argues that the ALJ failed to consider her subjective complaints of symptoms under the proper standard, and that Plaintiff's daily activities did not support the ALJ's discrediting the extent of Plaintiff's alleged impairments. In Polaski v. Heckler, 739 F.2d at 1320 (8th Cir. 1984), the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Id. at 1322. The Court explained that in evaluating a claimant's subjective complaints of pain, an ALJ must also consider "observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." Id.

After considering the Polaski factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that caused him to reject the

15

claimant's complaints.  Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir. 1998).  The ALJ need not discuss each factor listed in Polaski, so long as the analytical framework is recognized and considered.  Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).  In evaluating a claimant's subjective allegations of pain, the question is not whether the claimant suffers any pain; it is whether the claimant is fully credible when claiming that the pain is so great that it prevents the claimant from engaging in any substantial gainful activity.  Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997).

     Here, the ALJ gave several reasons for discrediting plaintiff's testimony as to the severity of her limitations, including her brief work record, her ability to do light housework and care for her two-year old grandson, her conservative treatment, the absence of a medical opinion that Plaintiff could not return to work activity or that she had chest pain of cardiac origin, her failure to stop smoking, and her failure to participate in a cardiac rehabilitation or attend a pain clinic.  These were valid factors to consider.  See, e.g., Masterson, 363 F.3d at (plaintiff's daily activities including ability to care for herself independently, assist in the care of her grandchildren, cook, and do light cleaning supported ALJ's determination plaintiff's pain was not as severe as alleged);  Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly considered plaintiff's sporadic work record reflecting relatively low earnings and multiple years with no reported earnings as pointing to a potential lack of motivation to return to work); Curran-Hickey v. Barnhart, 315 F.3d 964, 969-70 (8th Cir. 2003) (plaintiff's failure to participate in physical therapy, failure to take prescription pain medication regularly, and ability to do light housework undercut her

credibility that she had disabling pain); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000) (ALJ properly considered claimant's failure to follow doctor's advice to stop smoking in discrediting her subjective complaints); Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996) (complaints of disabling back pain were inconsistent with plaintiff's failure to seek medical treatment for the alleged pain). In sum, the evidence as a whole supports the ALJ's conclusion that Plaintiff's testimony was credible to the extent that she has some pain, but not to the extent that she cannot perform any type of work.

**ALJ's Reliance on the Guidelines**

Plaintiff argues that the ALJ was required to obtain the testimony of a vocational expert at step five of the sequential evaluation process in light of Plaintiff's non-exertional impairment of "significant chest pain." As noted above, where a claimant cannot perform the full range of work in a particular category of work listed in the Guidelines due to a non-exertional impairment such as pain, the ALJ cannot carry his burden at step five by relying exclusively on the Guidelines, but must consider testimony of a vocational expert. Here, however, the ALJ discounted Plaintiff's allegations of chest pain of a severity that would interfere with her ability to perform the full range of sedentary work, and this finding is supported by the record. As the ALJ noted, no doctor opined that Plaintiff had chest pain of cardiac origin, Plaintiff had not been under the recent care of a cardiologist, did not participate in cardiac rehabilitation, and continued to smoke. Upon review of the record, the Court concludes that the ALJ properly turned to the Guidelines to determine whether Plaintiff was disabled. See, e.g., Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005)

17

(because ALJ was within his discretion, based on the record, to find that plaintiff's pain did not diminish his ability to perform the full range of sedentary work, ALJ properly relied on the Guidelines without calling for vocational expert testimony); Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (same).

**ALJ's Determination of Plaintiff's Age for Purposes of the Guidelines**

Plaintiff argues that the ALJ committed reversible error in mechanically assigning Plaintiff the age of 49 in applying the Guidelines, as Plaintiff's 50th birthday was just four months away from the date of the ALJ's decision. Had the ALJ used an age of 50 and found that Plaintiff's previous work experience was unskilled, or skilled, or semi-skilled, with such skills being nontransferable, the Guidelines would have directed a finding of disabled, pursuant to Rules 201.09 and 201.10. The Commissioner asserts that if the Court were to find merit in Plaintiff's argument, the correct course of action would not be to award benefits, but to remand the case for further proceedings.

The regulations recognize that as age advances, a person is increasingly limited in the ability to adjust to other work, 20 C.F.R. § 404.1563(a), and thus the Guidelines take into account whether the claimant is a younger individual age 18 through 44, a younger individual age 45 through 49, and individual age 50 through 54 (closely approaching advanced age), or an individual age 55 or older (advanced age). The regulations provide that the ALJ may not apply the age category mechanically in a "borderline situation." Rather, if a claimant is "within a few days to a few months" of reaching an older age category, and using the older age category would result in a determination of disability, the

ALJ is to "consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case."  20 C.F.R. § 404.1563(b).

Entitlement to borderline-age consideration is generally measured as of the date of the ALJ's decision, see, e.g., Crady v. Secretary of HHS, 835 F.2d 617, 620 (6th Cir. 1987),[5] and the general consensus appears to be that the borderline range falls somewhere around six months from the older age category.  See Swan v. Barnhart, 2004 WL 1529270, at *9 (D. Me. April 30, 2004) (collecting cases); Russell v. Commissioner of Soc. Sec., 20 F.Supp.2d 1133, 113 (W.D. Mich. 1998) (collecting cases and noting an Appeals Council Interpretation which appears to establish a six-month borderline window).

The Eighth Circuit has not yet spoken on the time frame that constitutes a borderline situation.  The Court concludes that the present case, where Plaintiff was four months away from the next age category, presents a borderline situation, and that the ALJ was thus required to determine whether it was more appropriate to use the age of 50 in applying the Guidelines.  Such a determination is not the province of the courts, but is  within the sound discretion of the ALJ.  Daniels v. Apfel, 154 F.3d 1129, 1133 (10th Cir. 1998); Cox v. Apfel, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998) ("[B]ecause plaintiff was within six months of the next age category . . . at the time the ALJ issued his decision, he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the [Guidelines]"); Carter v. Barnhart, 2003 WL 22749253, at *7 (N.D. Cal. Nov. 14, 2003)

---

[5] If the claimant's insured status ended before the ALJ issued a decision, the date last insured would be the operative date for disability insurance benefits.

(same); Mosleh v. Barnhart, 2002 WL 31202674, at *8 (D. Del. 2002) (same). Thus, the Court shall remand the case for a determination of whether Plaintiff qualifies for benefits as a "borderline" claimant under Rules 201.09 or 201.10.

## CONCLUSION

Plaintiff's age placed her in a borderline situation regarding application of the Guidelines. The ALJ, however, failed to determine whether Plaintiff's age should be considered to be 50, and whether if so, she was disabled under the Guidelines. The Commissioner's decision must therefore be vacated and remanded for a finding on the appropriate age category to be used in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 8th day of September, 2005